IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Case Nos.   CV-05-390-S-BLW |
| | ) | CR-04-156-S-BLW |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| JESUS JIMENEZ ARELLANES, | ) | **AND ORDER** |
| | ) | |
| Defendant-Movant. | ) | |
| | ) | |

Pending before the Court is Defendant's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket No. 1) to which the Government has filed a Response (Docket No. 6).

Having reviewed the record, and otherwise being fully informed, the Court enters the following Order dismissing the § 2255 Motion.

### REVIEW OF § 2255 MOTION

#### A.    Procedural Background and Summary of Claims and Issues

Defendant and several other individuals were charged with conspiracy to distribute drugs and with several possession and firearm counts. *Superseding Indictment* (Docket No. 29). Defendant pled guilty to conspiracy to distribute approximately 5,750 grams of a methamphetamine mixture (Count 1) and to

**Memorandum Decision and Order - 1**

forfeiture of three firearms and approximately $34,000 in cash. *Plea Agreement*, ¶ I.A. (Docket No. 83). In return for the plea, the Government agreed to dismiss one of the possession counts (Count 7) involving 433 grams of a methamphetamine mixture and 428.6 grams of pure methamphetamine, and two firearms counts (Counts 11 and 12) alleging possession of three firearms while being illegally present in the United States. *Id.*

Pursuant to the Plea Agreement, the Government agreed to recommend a three-level reduction for acceptance of responsibility. Furthermore, the Government agreed to file a § 5K1.1 motion for substantial assistance, if warranted, and to request the Court to relieve Defendant of any applicable statutory minimum.

Based on the large amount of pure methamphetamine involved in the offense of conviction and a two-level enhancement for possession of firearms in relation to the offense, Defendant's offense level was calculated at 40. *PSR* at p. 12. After a three-level reduction for acceptance of responsibility, his total offense level became 37 which, with a criminal history category of I, resulted in a guideline range of 210 to 262 months). *PSR* at p. 16.

Shortly before the originally scheduled sentencing hearing, Defendant's retained counsel withdrew, and the Court appointed Federal Public Defender

**Memorandum Decision and Order - 2**

Samuel Richard Rubin to represent Defendant. Sent. Tr. 12. Mr. Rubin moved for a continuance of the sentencing hearing in order to identify possible grounds for objecting to the Presentence Report and to work with the Government to provide further substantial assistance.[1] *Id.* Mr. Rubin thereafter filed several written objections to the Presentence Report challenging the drug quantity calculation, the finding that Defendant possessed firearms in connection with the offense, and the refusal to apply the safety valve adjustment due to the firearm possession. Docket No. 130. Mr. Rubin also arranged renewed communication and cooperation with the Government. Sent. Tr. 12-13.

At the sentencing hearing, the parties stipulated that the offense level should be 34 based on the pound of methamphetamine Defendant actually procured, that the gun enhancement not be applied, and that Defendant was eligible for the safety valve adjustment. Sent. Tr. 5-8. For his part, Defendant agreed to drop his contention that he was entitled to a three-level reduction for role in the offense. The Government moved for a three-level reduction for acceptance of responsibility and a five-level departure for substantial assistance resulting in a total offense level of 24 with a guideline range of 51 to 63 months. Sent. Tr. 5, 10. The Court

---

[1] There had been a breakdown in communication between original counsel and the Government which had thwarted Defendant's efforts to cooperate more fully than he already had up to that point. Sent. Tr. 11.

**Memorandum Decision and Order - 3**

adopted the stipulation and granted the Government's motion. Sent. Tr. 10. Mr. Rubin argued for, and the Government had no objection to, a sentence at the low end of the guideline range. Sent. Tr. 12, 14.

On July 12, 2005, the Court imposed a sentence of 54 months, near the bottom of the guideline range. Sent. Tr. 19. Defendant did not appeal his sentence or conviction. He timely filed his § 2255 Motion alleging ineffective assistance of counsel for (1) failing to seek a downward departure pursuant to § 5K2.19 for post-conviction rehabilitation; (2) inducing him to enter a plea that was not knowing, voluntary, and intelligent; and (3) failing to seek a downward departure pursuant to § 5K2.20 for aberrant behavior. The Government contends that Defendant has failed to meet the *Strickland* standard of deficient performance and resulting prejudice. The Court agrees.

### B. Standards of Law

#### 1. Section 2255 Standard

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the

maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss the § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18

**Memorandum Decision and Order - 5**

F.3d 778, 781 (9th Cir. 1994).  However, where, assuming the truth of the specific factual allegations when viewed against the record, Defendant states a claim upon which relief could be granted, an evidentiary hearing is required to resolve the factual dispute before the Court can make a determination on the merits.  *See United States v. Leonti*, 326 F.3d 1111, 1116 (2003).

### 2. Ineffective Assistance of Counsel Standard

A defendant is entitled to effective assistance of counsel at the plea and sentencing stages of a criminal prosecution as well as at trial.  *United States v. Leonti,* 326 F.3d 1111, 1116-17 (9th Cir. 2003).  In fact, a defendant is entitled to counsel at all "critical stages" of the criminal process.  *Id.*

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice.  *See Strickland v. Washington*, 466 U. S. 668 (1984).  More specifically, to prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 697.  *See also Bell v. Cone*, 535 U.S. 685, 695 (2002).  Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel.  *See Shah v. United States*, 878 F.2d 1156,

**Memorandum Decision and Order - 6**

1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" or that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 686-87. Under the performance prong, there is a strong presumption that counsel's performance falls "with the wide range of reasonable professional assistance." *Id*. at 689.

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. This standard is "highly demanding." *Kimmellman v. Morrison,* 477 U.S. 365, 381-82 (1986).

The *Strickland* two-part test is applicable to a case in which a defendant contends that his counsel was constitutionally inadequate during the guilty plea process. *Hill v. Lockhart*, 474 U.S. 54, 58 (1985). To show prejudice in the guilty plea context, a defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. However, part of the prejudice

**Memorandum Decision and Order - 7**

determination is the likelihood a more favorable outcome at trial. *Id.*

In evaluating an ineffective assistance of counsel claim, the Court may consider the performance and prejudice components of the *Strickland* test in either order. *Id.* at 697. Furthermore, the Court need not consider one component if there is an insufficient showing of the other. *Id.*

### C.   Discussion

Because Defendant was represented by different counsel at the plea and sentencing stages of the proceedings, the Court will group the claims accordingly.

#### 1.   Plea Stage – Unknowing and Involuntary Plea

Defendant contends that his guilty plea was not entered into knowingly, voluntarily, and intelligently. He provides absolutely no specifics to support this claim. Rather, he provides general statements that a defendant must be aware of the relevant circumstances surrounding his plea; that a plea induced by misrepresentation of counsel is ineffective; that he must have been informed of the nature of the charges, the underlying factual basis of the charges, and the legal and options and alternatives open to him; that a properly conducted plea hearing does not guarantee that the plea is constitutionally valid; and that the court must look at the totality of the information the defendant had at the time of the plea and not merely the information communicated at the plea hearing.

**Memorandum Decision and Order - 8**

Defendant's vague and conclusory statements regarding pleas in general are not sufficient to state a claim of the ineffective assistance of his counsel at the plea stage of his proceedings. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). However, out of an abundance of caution, the Court will liberally construe his § 2255 Motion to allege that counsel misrepresented the length of his sentence.

The record reflects that immediately prior to the change of plea hearing, United States Magistrate Judge Mikel H. Williams had addressed Defendant's concerns about the Plea Agreement and advised him that no sentence had been agreed upon, that the district judge would determine the sentence after reviewing the presentence report, and that he had the right to continue with his plea of not guilty. Plea Tr. 2. Judge Williams also gave Defendant additional time to consider all of his options and had the Plea Agreement read to him again in Spanish with his attorney present. Plea Tr. 2. His attorney advised the Court that he and an interpreter had met with Defendant at the jail at which time the interpreter read the Plea Agreement to Defendant. Plea Tr. 3. Defendant confirmed his attorney's statement that Defendant advised him just prior to the hearing that he had no further questions and wanted to proceed with the guilty plea. Plea Tr. 3. In response to Judge Williams' question, Defendant said he did not need any more time to consider his decision to plead guilty. Plea Tr. 3.

**Memorandum Decision and Order - 9**

After Defendant was placed under oath, he confirmed that he had no difficulty understanding what the interpreter was saying during the plea hearing or when the interpreter read the Plea Agreement to him.  Plea Tr. 6.  He stated that he had an adequate amount of time to discuss the case with his attorney and was satisfied with his advice.  Plea Tr. 7.  He acknowledged that the Superseding Indictment had been read to him in Spanish and that he understood the minimum sentence for Count 1 was 10 years.  Plea Tr. 8.  Defendant acknowledged that there was no other "secret deal or understanding" that the Court did not know about inducing him to plead guilty.  Plea Tr. 8-9.  He again acknowledged that the Plea Agreement had been read to him in Spanish, that he had gone over it again that morning with his attorney, that his attorney answered all of his questions, and that he had no further questions.  Plea Tr. 10.

Judge Williams then discussed the terms of the Plea Agreement and advised Defendant that although his attorney could make certain recommendations, the district judge might not follow those recommendations.  Plea Tr. 13.  Judge Williams further advised Defendant of the rights he was giving up by pleading guilty.  Plea Tr. 13-15.  Acknowledging those rights, Defendant again confirmed that he wished to plead guilty.  Plea Tr. 15.  After the Government outlined the factual basis of the Plea Agreement, Defendant stated he agreed with those facts.

**Memorandum Decision and Order - 10**

Plea Tr. 15-19.

Judge Williams further explained the terms of the Plea Agreement, including the provision that the Court was required to impose the mandatory minimum sentence of ten years and that the district judge would determine any disputed facts. Plea Tr. 21-26. Defendant again stated that he understood. Plea Tr. 25-26. Most importantly, the Magistrate had the following exchange with Defendant regarding the length of his sentence:

> COURT: And as I think we talked the other day, what you have to understand is whatever your attorney has told you about how he believes the guidelines may affect your sentence, it's just a prediction on his part based upon what – how he thinks they may work but it's not binding on the district judge. Do you understand that?
>
> MR. JIMENEZ: Yes.

Plea Tr. 27. Further impressing upon Defendant that the district judge would make the ultimate determination regarding the length of the sentence, Judge Williams said:

> COURT: And I want to review these very important things here. You have to understand that no sentence has yet been determined by the district judge. Any estimate of a likely sentence from any source is not a promise and the district judge has the final authority to decide what the sentence will be. Do you understand that?
>
> MR. JIMENEZ: Yes. Yes, I understand it.

**Memorandum Decision and Order - 11**

Plea Tr. 28.  Then, after Judge Williams explained that any recommendations for a lesser sentence made by the Government were likewise not binding on the district judge, the following exchange occurred:

> COURT: Judge Winmill will of course pay careful consideration to these recommendations at the time of sentencing but you have to understand, as I've gone over many times, that he has the final authority to decide what the sentence will be.  You understand that?
>
> MR. JIMENEZ: Yes, Your Honor.

Plea Tr. 29.

As the transcript of the very thorough plea colloquy indicates, Defendant was advised several times that any promise or prediction regarding the length of the sentence was not binding on the Court.  He indicated several times that no one had made such a promise or prediction.  He stated he understood that even if one had been made, it was not binding on the Court.  In addition, he signed a Plea Agreement, that had been read to him in Spanish, in which he acknowledged that the Plea Agreement set forth the complete understanding between the parties and that no other promises had been made by the Government.  Plea Agreement, p. 12.

Statements made in open court at the time of a plea carry a "strong presumption of verity" and are entitled to great weight.  *Chizen v. Hunter,* 809 F.2d 560, 562 (9th Cir. 1986) (citing *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977);

**Memorandum Decision and Order - 12**

*see also U.S. v. Kazcynski,* 239 F.3d 1108, 1114-15 (9th Cir 2001) ("substantial weight" must be given to in-court statements).  Even though that presumption is not necessarily an insurmountable barrier to an evidentiary hearing, the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74 (citations omitted).  Furthermore, even where defense counsel provides erroneous advice regarding the length of the sentence, a plea colloquy providing the correct information can cure any potential prejudice.  *See United States v. Thornton*, 23 F.3d 1532, 1533-34 (9th Cir. 1994).

A careful review of the record indicates that Defendant has not overcome the strong presumption of the verity of his sworn statements made in open court with his subsequent conclusory allegations that are contradicted by the record.   Indeed, having failed to specify what alleged misrepresentations defense counsel made to him, he has not provided the Court with a basis for determining that his plea was anything but knowing and voluntary.  *See United States v. Michlin*, 34 F.3d 896, 899 (9th Cir. 1994).

    **2.**    **Sentencing Stage**

        **a.**    **Failure to Seek Downward Departure pursuant to § 5K2.19 for Post-Sentencing Rehabilitative Efforts.**

Defendant contends that because of his good behavior and efforts to

**Memorandum Decision and Order - 13**

rehabilitate himself while incarcerated, he is entitled a downward departure under § 5K2.19 which reads, in relevant part:

> Post-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense . . . .

U.S.S.G. § 5K2.19, effective November 1, 2000.  Defendant further contends that counsel was ineffective because he did not seek a departure under this guideline.

Defendant's reliance on § 5K2.19 is misplaced.  By its terms, the guideline applies to resentencings and Defendant is not being resentenced.  Furthermore, even if he were being resentenced, § 5K2.19 prohibits consideration of post-sentencing rehabilitative efforts.[2]  Defense counsel cannot be considered deficient for not seeking relief under a guideline that is inapplicable to Defendant's case.  However, even if defense counsel had filed a motion for downward departure under § 5K2.19, it would not have been granted.[3]

---

[2] Defendant cites cases indicating that consideration of post-sentencing rehabilitative efforts may be considered upon resentencing.  However, they were decided prior to the effective date of § 5K2.19.  Although it is arguable that under the post-*Booker* advisory guidelines those efforts may now be considered, Defendant is not being resentenced.

[3] To the extent the Defendant may be alleging that he was entitled to a departure based on good conduct and rehabilitative efforts between the time of arrest and sentencing, his claim must also fail.  While the Court can consider extraordinary post-offense rehabilitative efforts, it is not likely that the Court would have granted an additional departure.  Defendant had already received significant departures and concessions from the Government.  Furthermore, Defendant has not identified the nature of his rehabilitative efforts.

**Memorandum Decision and Order - 14**

### b.      Failure to Seek Downward Departure Pursuant to § 5K2.20 for Aberrant Behavior (Policy Statement)

Defendant contends that defense counsel should have sought a downward departure for aberrant behavior based on his lack of criminal history and clear record.[4]  However, such a departure was not available to Defendant because by its terms, the § 5K2.20 Policy Statement prohibits a departure based on aberrant behavior if the offense of conviction is a serious drug trafficking offense.  USSG § 5K2.1(c)(3).  A "serious drug trafficking offense" is "any controlled substance offense under Title 21, United States Code, other than simple possession under 21 U.S.C. § 844, that provides for a mandatory term of imprisonment of five years or greater, regardless of whether the defendant meets the criteria of § 5C1.2 (Limitation on Applicability of Statutory Mandatory Minimum Sentences in Certain Cases)."  USSG § 5K2.20, comment.,  (n.1).

Defendant's offense of conviction was 21 U.S.C. § 841(a)(1).  Based on the drug quantity, there was a mandatory minimum sentence of ten years.  Clearly, Defendant would not have been entitled to a departure for aberrant behavior under the mandatory guideline scheme.  The Court notes that Defendant was sentenced after the guidelines became advisory and the courts became obligated to consider

---

[4] Defendant's lack of criminal history is reflected in his placement in criminal history category I.  If he had had an criminal history points, his guideline range would have been higher.

**Memorandum Decision and Order - 15**

all of the sentencing factors in 18 U.S.C. § 3553(a).  *See United States v. Booker*, 543 U.S. 220 (2005).  However, even under the advisory scheme, the Court was still required to consider any pertinent policy statement, such as § 5K2.20.  *See* 18 U.S.C. § 3553(a)(5).  In addition, the Court found the sentence it imposed was "clearly justified" by all the criteria in 18 U.S.C. § 3553(a).  Sent. Tr. 18.  Given the seriousness of Defendant's offense of conviction, and the significant concessions made by the Government, this Court would not have further reduced his sentence even if counsel had argued for a reduction based on aberrant behavior.  Therefore, Defendant has failed to meet the prejudice prong of the *Strickland* test.

## CONCLUSION

Defendant has failed to meet the *Strickland* test of deficient performance and resulting prejudice on the part of counsel at either the plea or the sentencing stage of this case.

The Court remembers this case very well.  Even if counsel had been deficient at the plea stage, any deficiency was cured not only by the plea hearing but also by the competence of counsel at the sentencing stage.  As the Court remarked to Defendant at the close of the sentencing hearing:

> I have imposed a sentence which is near the bottom of
> the Guideline Range.  I think, Mr. Jiminez (sic) you are
> extremely fortunate that Mr. Rubin took over this case,
> did his usual masterful job in representing you, in

> obtaining an agreement which works so much to your benefit. You could very easily be looking at something approaching 20 years in prison instead of, what, four and a half years.

Sent. Tr. 22.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket No. 1 in CV-05-390-S-BLW and Docket No. 144 in CR-04-156-S-BLW) is DISMISSED.

IT IS FURTHER HEREBY ORDERED that Case No. CV-05-390-S-BLW is DISMISSED with prejudice in its entirety.



DATED: **August 22, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 18**